# RICH-TAUBMAN ASSOCIATES *v.* COMMISSIONER OF REVENUE SERVICES
## (15236)

Peters, C. J., and Callahan, Borden, Berdon and Norcott, Js.

Argued January 10—officially released April 16, 1996

*Robert M. Dombroff*, with whom were *Ann M. Siczewicz* and, on the brief, *Louis B. Schatz*, for the appellant (plaintiff).

*Paul M. Scimonelli*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

CALLAHAN, J. The issue in this appeal is whether the plaintiff, Rich-Taubman Associates, the agent designated by the city of Stamford to operate and maintain a city-owned parking garage, is exempt from use taxes assessed by the defendant, the commissioner of revenue services (commissioner). The plaintiff claims that the purchases for which the commissioner assessed use taxes were made by it on behalf of the city as the city's agent and, consequently, are exempt from use tax liability pursuant to General Statutes (Rev. to 1985) § 12-412 (1).[1] The commissioner determined that the plaintiff was not exempt and was liable for use taxes, pursuant to General Statutes (Rev. to 1985) § 12-411,[2] on purchases that it made for use in the maintenance and operation of the city's parking garage. The commissioner accordingly levied substantial use taxes and penalties against the plaintiff. Thereafter, the commissioner

---

[1] General Statutes (Rev. to 1985) § 12-412 provides in relevant part: "Exemptions. Taxes imposed by this chapter shall not apply to the gross receipts from the sale of and the storage, use or other consumption in this state with respect to the following items:

"(1) The United States, the state or subdivisions. Sales of tangible personal property or services to the United States, the state of Connecticut or any of the political subdivisions thereof, or its or their respective agencies."

[2] General Statutes (Rev. to 1985) § 12-411 provides in relevant part: "The use tax. (1) Imposition and rate. An excise tax is hereby imposed on the storage, acceptance, consumption or any other use in this state of tangible personal property purchased from any retailer for storage, acceptance, consumption or any other use in this state or the acceptance or receipt of any services constituting a sale in accordance with subdivision (i) of subsection (2) of section 12-407, at the rate of seven and one-half per cent of the sales price of the property or the consideration paid for any such services.

"(2) Liability for tax. Every person storing, accepting, consuming or otherwise using in this state services or tangible personal property purchased from a retailer is liable for the tax. His liability is not extinguished until the tax has been paid to this state, except that a receipt from a retailer engaged in business in this state or from a retailer who is authorized by the commissioner, under such regulations as he may prescribe, to collect the tax and who is, for the purposes of this chapter relating to the use tax, regarded as a retailer engaged in business in this state, given to the purchaser pursuant to subsection (3) of this section is sufficient to relieve the purchaser from further liability for the tax to which the receipt refers."

affirmed the assessment, and the plaintiff appealed to the Tax Session of the Superior Court pursuant to General Statutes § 12-422.[3] The court sustained the assessment imposed by the commissioner and rendered judgment dismissing the plaintiff's appeal. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the trial court.

The question of the plaintiff's use tax liability arises out of the following stipulation of facts entered into by the parties, and the undisputed testimony of the sole witness at trial. On June 30, 1978, the plaintiff, a Connecticut general partnership, entered into a contract with the city of Stamford and the Stamford Parking Authority (parking authority), a municipal agency, to operate and maintain the Stamford Town Center Parking Garage (parking garage), which was owned by the city. The agreement expressly designated the plaintiff as the agent of the parking authority and of the city[4] for purposes of carrying out the city's duty to maintain and operate the parking garage. As the city's agent, the plaintiff was required, among other things, to remove waste from the garage, to sweep the grounds of the facility, to inspect and replace lighting fixtures, and to maintain and repair the elevators and escalators and

---

[3] General Statutes § 12-422 provides in relevant part: "Any taxpayer aggrieved because of any order, decision, determination or disallowance of the commissioner of revenue services . . . may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of Hartford-New Britain . . . ."

[4] The agreement provided that the city was to become the successor to the parking authority on July 1, 1978, and that the city agreed to be bound by all provisions contained in the agreement pertaining to the parking authority. Therefore, for purposes of trial and appeal, the parties have treated the plaintiff's designation as the agent of the parking authority the same as its being the agent of the city.

other equipment. The plaintiff was also obligated to provide adequate security and a complete sign system to assist the members of the public in their movement within the garage.

The agreement further provided that: (1) the city was required to reimburse the plaintiff for any expenditures incurred in connection with the operation and maintenance of the parking garage; (2) the city was solely responsible for any taxes that might accrue or arise by reason of the existence and operation of the parking garage; (3) any revenue generated from the operation of the parking garage was to be placed in a trust fund, which was established by the city but administered by the plaintiff, out of which the expenses of the garage were to be paid; (4) parking garage expenses were to include all costs incurred in the operation and regular maintenance of the facility, including all costs for rentals and service contracts; and (5) the plaintiff was entitled to a management fee for the work performed to fulfill its obligations under the contract.

The commissioner conducted an audit of the plaintiff for the period between April 1, 1986, and March 31, 1989. During that period, the plaintiff had made various purchases needed for the operation and maintenance of the parking garage. The commissioner assessed the plaintiff use taxes in the amount of $113,960 on those purchases. The plaintiff thereafter petitioned for a reassessment of the use taxes and requested a hearing before the commissioner. The commissioner, without conducting a hearing, affirmed the assessment by letter dated May 3, 1990. The commissioner also imposed a 10 percent negligence penalty because, in a prior audit, he had addressed the plaintiff's possible exposure to substantial use tax liability for purchases made for the city's parking garage and the plaintiff allegedly had failed to pay proper attention to its potential liability.

The plaintiff's appeal to the trial court followed the commissioner's affirmation of his assessment.

In the trial court, in addition to relying on a stipulation of facts, the plaintiff presented the testimony of its employee, Carrie Fudge, who was the bookkeeper for the parking garage account. She testified that, between April 1, 1986, and March 31, 1989, all the vendors from whom the plaintiff had purchased goods and services used in maintaining and operating the parking garage had been provided with a tax exemption certificate executed and furnished by the city. The certificate informed the vendors that the plaintiff's purchases were not subject to sales and use taxes pursuant to § 12-411 because those purchases were made for and on behalf of the city. She further stated that, if a vendor's invoice included a charge for sales and use tax, the vendor had been notified of the plaintiff's status and provided with the necessary certificates of exemption. The vendor then eliminated the tax charge.

The plaintiff argued in the trial court that it was the agent of the city of Stamford, a tax-exempt political subdivision of the state, and that it was charged with fulfilling the city's municipal obligation to operate and maintain the city-owned parking garage. It claimed, consequently, that any purchases it made as the city's agent came within the purview of § 12-412 (1) and were exempt from the sales and use tax.[5]

The trial court disagreed with the plaintiff's argument and dismissed its appeal. The court initially conducted a facial examination of § 12-412 (1) and determined that

---

[5] The plaintiff claimed alternatively that the goods and services purchased by it were resold to the city and that, consequently, it is exempt from use tax liability pursuant to General Statutes § 12-407 (5), which defines use to exclude goods purchased for resale in the regular course of business. See footnote 6. The plaintiff renews this claim in this appeal. Because of our resolution of the applicability of the exemption provided in § 12-412 (1), we need not address this issue.

the term "agency" was not synonymous with the term "agent" for purposes of the statutory exemption. The court also reasoned that, had the legislature desired to extend the tax exemption provided by § 12-412 (1) to agents of a tax-exempt political subdivision, it would have done so expressly. The court concluded that the plaintiff was not exempt from the use tax because it was the purchaser of the materials and services used to maintain the city's parking garage and because it was not a political subdivision of the state or a municipal agency. The trial court then sustained the 10 percent negligence penalty imposed by the commissioner. This appeal followed.

The trial court based its conclusions on the parties' stipulation of facts, the briefs of the parties, oral arguments and the uncontroverted testimony of the sole witness at trial. We, therefore, are called upon to review the legal conclusions of the trial court. "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. Practice Book § 4061; *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 752, 601 A.2d 1005 (1992) . . . ." *Morton Buildings, Inc.* v. *Bannon*, 222 Conn. 49, 53, 607 A.2d 424 (1992).

The plaintiff claims that the trial court improperly concluded that the purchases that it made for the city for use in the maintenance and operation of the city-owned parking garage were not exempt from taxation pursuant to § 12-412 (1). In support of its claim, the plaintiff argues that common law principles of agency inform the tax statutes and dictate the conclusion that an agent is entitled to the same use tax exemption that is conferred upon its disclosed principal by § 12-412 (1) for purchases that the agent has made within the scope of its authority. We agree.

We begin by noting the general rule that "[u]nless a statute provides to the contrary . . . principals may act through agents; [1] Restatement (Second), Agency (1958) § 17; and may appoint agents by written or spoken words or other conduct. [1] Restatement (Second), Agency (1958) § 26." (Citations omitted; internal quotation marks omitted.) *Fairfield County National Bank* v. *DeMichely*, 185 Conn. 463, 470–71, 441 A.2d 569 (1981); see *State* v. *Tedesco*, 175 Conn. 279, 287, 397 A.2d 1352 (1978) (principal may delegate to agent all that he himself can do except acts peculiarly personal or required by statute to be performed personally by principal). From this, it follows that "[a] principal is generally liable for the authorized acts of his agent; 1 Restatement (Second), Agency § 140, p. 349 (1958) . . . ." *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 240, 654 A.2d 342 (1995). To avoid personal liability, an agent must disclose to the party with whom he deals both the fact that he is acting in a representative capacity and the identity of his principal. *Klepp Wood Flooring Corp.* v. *Butterfield*, 176 Conn. 528, 532–33, 409 A.2d 1017 (1979); see 2 Restatement (Second), Agency § 328 (1958). Accordingly, "the agent is not liable where, acting within the scope of his authority, he contracts with a third party for a known principal." *Scribner* v. *O'Brien, Inc.*, 169 Conn. 389, 404, 363 A.2d 160 (1975); see *Behlman* v. *Universal Travel Agency, Inc.*, 4 Conn. App. 688, 690, 496 A.2d 962 (1985) ("[a]n agent, by making a contract only on behalf of a competent disclosed principal whom he has the power to bind, does not thereby become liable [on the contract] for [the principal's] nonperformance"). Under the rules of agency, "[u]nless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract." 2 Restatement (Second), Agency § 320 (1958).

The plaintiff argues that we should apply these common law principles to § 12-412 (1), thereby permitting it to claim the exemption from use tax liability on purchases made for the city pursuant to its contractual obligation to the city and within the scope of its agency relationship with the city. We have repeatedly observed that traditional common law principles can inform the General Statutes and can assist us in determining how the statutes are to be interpreted and applied. See, e.g., *Lauer* v. *Zoning Commission*, 220 Conn. 455, 460, 600 A.2d 310 (1991) (" '[i]n seeking to discern that [legislative] intent, we look to . . . common law principles governing the same general [area] . . .' "); *Dart & Bogue Co.* v. *Slosberg*, 202 Conn. 566, 572, 522 A.2d 763 (1987) (same).

Applying the law of agency to the tax statutes, we conclude that the plaintiff, concededly acting as the city's agent when purchasing materials and services for the parking garage, is not liable for use taxes on purchases made within the scope of its authority. Section 12-412 (1) should not be read to impose use tax liability on purchases that otherwise would be exempt from taxation merely because the city, in the interest of economy and efficiency, has appointed an agent to procure the materials and services necessary to ensure the successful and efficient operation of its parking garage. Although mindful that exemptions are matters of legislative grace and are to be construed strictly against the taxpayer; *Plastic Tooling Aids Laboratory, Inc.* v. *Commissioner of Revenue Services*, 213 Conn. 365, 369, 567 A.2d 1218 (1990); we are not persuaded that § 12-412 (1) should be read so narrowly as to preclude the agent of a disclosed tax-exempt principal from utilizing the exemption provided by that statute. Section 12-412 (1) does not abrogate the common law rule of agency that the actions of an agent, who is acting for a disclosed principal, are, as a matter of law, the

actions of the principal. See *Gateway Co.* v. *DiNoia,*
supra, 232 Conn. 240; *Ray* v. *Isbell,* 64 Conn. 307, 309,
29 A. 538 (1894). We conclude that § 12-412 (1) does
not require that a distinction for purposes of the use
tax be drawn between a purchase by the tax-exempt
municipality itself and a similar purchase for the tax-
exempt municipality by its agent. Logically, in each
instance, the § 12-412 (1) exemption from use tax liabil-
ity should apply.

In this instance, our conclusion is supported by the
express terms of the agreement between the city and
the plaintiff, which make the city responsible for all
taxes arising out of the existence and operation of the
parking garage. Thus, if we were to conclude that the
plaintiff is ineligible for the § 12-412 (1) exemption, the
city, in effect, would lose its statutory tax exemption
and be subject to use tax liability. Such a result was
clearly not the legislature's intention in enacting § 12-
412 (1). It is axiomatic that a statute, even one providing
for a tax exemption, should not be construed to effectu-
ate a bizarre or irrational result. See *LoPresto* v. *State
Employees Retirement Commission,* 234 Conn. 424,
450, 662 A.2d 738 (1995); *State* v. *Jimenez,* 228 Conn.
335, 341, 636 A.2d 782 (1994). It would be irrational to
require the city to expend public trust funds to pay use
taxes, contrary to the legislative intent, simply because
the city acted by and through its designated agent.

The commissioner contends, nonetheless, that our
holdings in *American Totalisator Co.* v. *Dubno,* 210
Conn. 401, 555 A.2d 414 (1989), *White Oak Corp.* v.
*Dept. of Revenue Services,* 198 Conn. 413, 503 A.2d 582
(1986), and *Fusco-Amatruda Co.* v. *Tax Commissioner,*
168 Conn. 597, 362 A.2d 847 (1975), govern this case.
Those cases, the commissioner argues, mandate the
conclusion that, regardless of the plaintiff's uncontro-
verted status as the city's agent, the plaintiff was the
consumer of the goods and services that it purchased

for use in the maintenance and operation of the city's parking garage. The commissioner insists, therefore, that the plaintiff cannot claim the benefit of the § 12-412 (1) exemption. We, however, do not read those cases to stand for the proposition that the agent of a tax-exempt municipality is ineligible for the exemption afforded its disclosed principal. In each of the cases relied upon by the commissioner, the taxpayer was not designated, nor was the taxpayer found to be, the agent of the tax-exempt entity; rather, each taxpayer was an independent contractor simply purchasing materials or services necessary to the fulfillment of its own contractual obligations to a tax-exempt entity.

In *American Totalisator Co.* v. *Dubno*, supra, 210 Conn. 403, the taxpayers contracted with the state to provide personal property, training, personnel and services to establish systems necessary for the state to conduct its lottery, teletrack and off-track betting enterprises. To fulfill its contract, the taxpayers purchased computer components, computer terminals, paper stock and other tangible items. Id. The commissioner assessed the taxpayers a use tax on those items and the taxpayers contested the imposition of the tax. We determined that the taxpayers were liable for the use tax, concluding that "[w]here, as here, the primary function and purpose of the taxpayers was to provide wagering systems and the ownership, use and maintenance of certain personal property and equipment were necessary to enable them to furnish those systems, those taxpayers, not the state, were the ultimate users or consumers of that property and equipment within the meaning of the sales and use tax statutes." Id., 410. We also concluded that the taxpayers' purchases "were incidental to the primary purpose of the contracts which was to provide the state with wagering systems." Id., 409.

In *White Oak Corp.* v. *Dept. of Revenue Services*, supra, 198 Conn. 415, the taxpayer entered into a contract with the state to construct various highways and bridges throughout the state. Under the terms of the contracts, the taxpayer was obligated to provide watchmen, trafficmen and flagmen at each location, as well as to rent highway flashers to be placed along the roadside. Id. We determined that the taxpayer was liable for a sales and use tax on those items, concluding that "the services and rentals in question were incidental to the [taxpayer's] performance of the construction contracts . . . [and, therefore,] the [taxpayer] 'used' them to fulfill its contracts." Id., 423.

Similarly, in *Fusco-Amatruda, Inc.* v. *Tax Commissioner*, supra, 168 Conn. 599, we determined that purchases of construction materials by a general contractor who was obligated to build an apartment complex for a charitable organization were subject to a use tax, despite the exemption from use tax liability provided the charitable organization pursuant to then § 12-412 (h), now § 12-412 (8). We concluded that the general contractor had procured the materials not as the agent of the charity, but to satisfy its own obligation to build the apartment complex and, therefore, the contractor, rather than the charitable organization, was the consumer of the materials used and was subject to use tax liability. Id., 600–601.

Unlike the taxpayers in those cases, the plaintiff in this case was expressly designated to be the city's agent for the maintenance and operation of the city-owned parking garage. Further, all purchases were made for the city and were used exclusively for the city's benefit. Moreover, the plaintiff disclosed its agency relationship to every vendor with whom it had dealt by delivering to each vendor a certificate of tax exemption executed and supplied by the city. In addition, all purchases made by the plaintiff were paid for with moneys from a trust

fund that the city had established for the sole purpose of financing the operation and maintenance of the parking garage. It is evident, therefore, that the plaintiff and the city, both contractually and in actuality, maintained a disclosed principal-agent relationship that made the acts of the agent acting within the scope of its authority the acts of the principal. See *Gateway Co.* v. *DiNoia,* supra, 232 Conn. 240; *Ray* v. *Isbell,* supra, 62 Conn. 309; *Bank of Montreal* v. *Gallo,* 3 Conn. App. 268, 272, 487 A.2d 1101 (1985). Furthermore, the plaintiff, having effected its purchases for the city with the city's moneys and as the city's disclosed agent, did not, and could not, exercise the rights over its purchases incident to ownership that define a "use" subject to the use tax as contemplated by § 12-411. See General Statutes § 12-407 (5).[6]

We conclude, therefore, that the plaintiff is entitled to claim the § 12-412 (1) use tax exemption provided a political subdivision of the state for the purchases it made on behalf of the city of Stamford for use in the maintenance and operation of the city's parking garage. Accordingly, the judgment of the trial court with respect to the imposition of use tax liability on the plaintiff pursuant to § 12-411 cannot be sustained.

In light of this conclusion, we must also reverse that portion of the trial court's judgment sustaining the imposition of the 10 percent penalty for negligence.

The judgment is reversed and the case is remanded with direction to render judgment sustaining the plaintiff's appeal.

In this opinion the other justices concurred.

---

[6] General Statutes § 12-407 (5) states that use "includes the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it does not include the sale of that property in the regular course of business."