[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Leonard and Robert Udolf; seek recovery of damages from the defendant (hereinafter sometimes "James Reiner") for breach of a written commercial lease (hereinafter the "Lease").
Plaintiffs allege James Reiner d/b/a Mayflower Laundry leased commercial space in a building owned by them and located at 320 West main Street, Avon, Connecticut (hereinafter "Tri-Town"). The initial term of the lease was five years, commencing October 1, 1990, and running through September 30, 1995. They further allege that James Reiner took possession of the Tri-Town space, operated his business there until September 1993 when he vacated and ceased paying rent, common charges and taxes due under the Lease. The plaintiffs are seeking damages in excess of $70.000.00 for the period October 1, 1993 to March 31, 1995, as well as costs and attorney's fees pursuant to the Lease.
In his answer, James Reiner denies the material allegations of the complaint, specifically he denies doing business as Mayflower Laundry; he denies leasing the "Tri-Town" space, taking possession of the premises, and owing the plaintiff unpaid rent and charges under the Lease. He specifically avers the "indenture of lease for 320-324 West main Street refers to Mayflower Laundry Dry Cleaning Co. as Tenant."
The court finds the following pertinent facts: The Lease was signed by James Reiner sometime in July 1999. Prior to that time, Alvin Reiner, father of James Reiner, had been negotiating exclusively with Leonard Udolf father of Robert Udolf, to lease premises for an entity known as Mayflower Laundry Dry Cleaning Co. At the time, James Reiner was not an officer or shareholder of Mayflower, nor was he doing business as Mayflower. James was a manager. Mayflower leased premises in Avon near Tri-Town the lease could not be renewed, and Mayflower would have to CT Page 6704-x vacate in May 1990. Alvin Reiner was looking to reopen in a nearby location in Avon in June 1990. Initially, he negotiated with Leonard Udolf for space in a building across the street from Tri-Town. When that space became unavailable, Alvin continued to negotiate with Leonard, but for space in Tri-Town. He believed he had reached an agreement with Leonard Udolf on the terms of a lease for space at Tri-Town. Once Alvin was provided with a lease document he intended to review it and have his attorney review it. Alvin never signed a Lease for Mayflower until his attorney had reviewed it.
On May 22, 1990, Robert Udolf obtained a building permit for a tenant buikling [building] at Tri-Town for "Mayflower Cleaners." The Tri-Town space was not available when Mayflower was required to vacate its location on May 30, 1990. Alvin was calling Leonard Udolf regularly at this time. All lease negotiations and understandings were exclusively between Alvin and Leonard. Because Alvin believed that he and Leonard had agreed on all of the terms of a lease for space at Tri-Town, Alvin, with Leonard's permission, stored everything of Mayflower, such as counters and racks, in a vacant space at Tri-Town.
In July 1990, while still dealing exclusively with Leonard, Alvin called Leonard to inform him of plans to be away from July 10 through July 24 and that he wanted to move into the Tri-Town space before then. Leonard indicated that it was not likely. Alvin told Leonard that if there was a change, his son James could handle the move. At this time, no one was discussing lease documents, everything was in place as far as Alvin Reiner was concerned.
While Alvin was away in July, Robert Udolf called James Reiner twice and told him he had to come in to sign the lease to hold the store. James advised Robert that he had no authority and that Alvin would be back in a week. James was told by Robert that if he did not come in then he would lose the store. James went to Robert's office. Robert told him that the lease was subject to review, that it would be amended when Alvin came back and that it was just an agreement to agree. James Reiner, while asserting that he had no authority, did sign the Lease. James Reiner never indicated that he was signing in anything other then a representative capacity.
The Lease has a cover page which identifies the tenant as "Mayflower Laundry and Dry Cleaning Co." The first page of the Lease refers to the tenant as "Mayflower Laundry." James Reiner has never held himself out as doing business as Mayflower Laundry or Mayflower Laundry Dry Cleaning Co. At the time James signed the Lease, the Security Deposit called for CT Page 6704-y in Section 29.01 was not required or paid. There was no evidence that James was required to execute the Security Agreement and UCC-1 forms called for in Section 33.01 of the Lease. The Lease signed by James does not contain a description of the demised premises or a date when signed it.
James Reiner never indicated that he was signing in any capacity other than in a representative capacity. James Reiner disavowed authority to sign the Lease. He reluctantly executed the document to make sure the company did not lose space that it wanted. He signed the lease on the representation of Robert Udolf and believing that he was holding the store space until his rather returned from vacation. James Reiner had no business of his own; he did not intend to occupy the store personally. Robert Udolf told James Reiner that when Alvin Reiner returned. ". . . the properly executed document would be done."
When Alvin returned from his vacation in July of 1990, he reviewed the Lease and found that the description of uses was incorrect and inadequate. He called Leonard Udolf who told Alvin not to worry and promised he would get Alvin a lease which listed all services, that it would be proper and "then you can sign it." Alvin Reiner did not follow up with Leonard to obtain a revised Lease.
In October 1990, Mayflower took occupancy in the Tri-Town space, paid the rent monthly on corporate checks of "The Mayflower Laundry 
dry-cleaning Co." with the authorized signature of Alvin R Reiner. Mayflower vacated the premises in September 1993 and stopped paying tent.
At trial, only Robert Udolf Alvin Reiner and James Reiner testified. Leonard Udolf did not testify.
The dispositive issue is whether, under the facts as found and set forth above, James Reiner is bound in his individual capacity to fulfill the Lease obligations.
An agent cannot be held personally liable when he discloses he is dealing in a representative capacity, acts within the scope of his authority, and contracts for a known principal. Rich Taubman Associatesv. Commissioner of Revenue Service, 236 Conn. 613 (1996); Restatement(2nd) Agency, § 328.
"To avoid personal liability, an agent must disclose to the party with whom he deals both the fact that he is acting in a representative CT Page 6704-z capacity and the identity of his principal" Rich-Taubman Associates v.Commissioner of Revenue Services, 236 Conn. 613, 619, 674 A.2d 805
(1996). "`[U]nless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract.'" Id., quoting 2 Restatement (Second), Agency § 320 (1958). "`Where sufficient information is disclosed upon the face of the contract by the agent to disclose to a reasonable person the identity of the principal, the principal and not the agent is liable. . . . [I]f the third person actually knew that the agent was acting for a principal and also knew the principal's identity at the time of the transaction in question, the principal is considered to have been disclosed.'" Paolillo v. Richards, Superior Court, judicial district of New Haven at New Haven, Docket No. Z45655 (July 31, 1996, Meadow,S.T.R.), quoting 3 Am.Jur.2d Agency § 327, p. 834.
James Reiner did act in a representative capacity and this was known to Robert Udolf who induced James to act in that capacity in his father's absence. James Reiner disclosed his limited capacity. He was called upon and induced by Robert Udolf to act while Alvin Reiner was away to hold the space for which Alvin had negotiated. James reluctantly agreed to do so, even while disavowing any interest in the business and his authority. Plaintiff offered no proof to rebut the testimony of James and Alvin Reiner that the Lease was always intended to be for Mayflower. The Lease itself refers to the tenant as Mayflower Laundry Dry Cleaning Co. and as Mayflower Laundry. There is no mention of James Reiner individually or as a d/b/a.
The rule absolving an agent of liability when acting for a disclosed principal is stated to apply when the agent is "acting within his scope of authority." In this case, there is no dispute that James was not authorized by Alvin Reiner to sign the Lease. The Lease was, however, ratified. "[R]ratification is defined as the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account . . . Ratification requires acceptance of the results of the act with an intent to ratify, and with full knowledge of all the material circumstances. . . . In order to ratify the unauthorized act of an agent and make it effectual and obligatory upon the principal, the general rule is that the ratification must be made by the principal with a fall and complete knowledge of all the material facts connected with the transaction to which it relates. . . ." (Internal quotation marks omitted.) Community Collaborative of Bridgeport, Inc. v. Ganim,241 Conn. 546, 561, 698 A.2d 245 (1997). "[S]ilence, as well as affirmative acts, may imply an intent to ratify." (Internal quotation marks omitted.) Id., 561-62. The ratification of an agent's acts may CT Page 6704-aa "[relate] back to the time of the execution of the lease and [be] tantamount to a prior command." Socony-Vacuum Oil Co., Inc. v. Elion,126 Conn. 310, 319, 11 A.2d 5 (1940). "[E]ven thought he act may have been done without any precedent authority whatsoever, ratification creates the relationship of principal and agent." 3 Am.Jur.2d Agency § 203, p. 706:
Alvin Reiner ratified the Lease signed by the defendant by moving Mayflower into the Tri-Town space in October 1990 and doing business there for three years. by paying rent and enjoying the benefits of the contract with knowledge of all material circumstances.[1] Because of the ratification, James Reiner's signing of the lease constitutes conduct within the scope of his authority as an agent.
James Reiner is not personally liable on the Lease because the owner knew at the time of signing that James was signing as an agent for his father to hold the space at Tri-Town for Mayflower. Accordingly, judgment may enter in favor of the defendant.
Tanzer, J.