[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs filed a four-count complaint seeking the following: 1) Payment for one-half of the fair-rental-value or use and occupancy by the defendant at 325 Buckland Street, Southington, Connecticut; 2) reimbursement for conversion of a lawn mower, expenses incurred when deprived of its use, and treble damages for theft of the lawn mower; 3) this count was withdrawn at trial, and 4) damages for failure to execute and deliver a release on a mortgage on 319 Buckland Street, Plantsville, Connecticut.
The court reviewed the pleadings, testimony and exhibits, and assessed the credibility of the witnesses. The following background information is relevant: The plaintiff, Kim Albrecht had been married to the defendant Robert Albrecht. They lived together at 325 Buckland Street, Southington until 1996 when Kim Albrecht left. At the time she left, she owned a twenty-five percent interest (25%) in the property, Robert Albrecht owned twenty-five percent (25%), and Julian Albrecht and his wife (Robert Albrecht's parents) owned the other fifty percent (50%).
On January 23, 1998, the marriage between Kim Albrecht and Robert Albrecht was dissolved. Kim Albrecht then acquired a fifty percent (50%) interest in 325 Buckland Street, Southington, and Robert Albrecht became a tenant. On May 22, 1999, Kim Albrecht conveyed her half-interest to Julian Albrecht and his wife, who in turn conveyed their interest in 319 Buckland Street, Plantsville to her.
On June 12, 1998, Kim Albrecht issued a promissory note[1] to Robert Albrecht in the amount of $11,405.00 plus interest at four percent (4%) per annuum. The promissory note was due the earliest of January 22, 2003, or the sale, or transfer of 325 Buckland Street, Southington.
On May 15, 1999, Kim Albrecht gave Robert Albrecht a mortgage to 319 Buckland Street, Southington, in the amount of $11,405.00, payable with interest as provided in the promissory note of June 12, 1998. All references in the note to 325 Buckland Street were deleted and 319 Buckland Street was substituted. The final maturity date remained January 22, 2003 or the sale of 319 Buckland Street. The note could be paid off sooner as there was no pre payment penalty.
The Albrecht family and the Ciccarello family were obviously close at one time and were united by marriage. The relationships became estranged when Kim Albrecht and Robert Albrecht separated. By the time of the CT Page 4121 divorce, they were barely speaking to each other. The situation reached a point where "no one could see the forest for the trees," and this litigation is the result of that loss of perspective.
On July 29, 1999, Kim Albrecht sold 319 Buckland Street. She expected a release of the mortgage in exchange for $11,405.00 of the proceeds being placed in escrow, pending the outcome of this litigation.
 DISCUSSION
1.) FAR-RENTAL-VALUE/USE AND OCCUPANCY
The issue presented is what is the fair-rental-value of 325 Buckland Street, Southington, and what payments, if any, should be awarded to Kim Albrecht.
Connecticut General Statutes § 47a-3c provides that "in the absence of an agreement, the tenant shall pay the fair-rental-value for the use and occupancy of the dwelling unit. The fair-rental-value is the prevailing market-rental-value for premises similar to the subject premises during the period in question. Lonergan v. Conn. Food Store,Inc., 168 Conn. 122, 131-32 (1975).
On January 23, 1998, Kim Albrecht owned half of the premises and the defendant's parents' owned the other half. The defendant had lived at 325 Buckland Street during the marriage and continued to do so after the divorce. Kim Albrecht had lived at the premises for seventeen years until she left in 1996, when the parties became separated. She became fifty percent (50%) owner of the premises and Robert Albrecht became a tenant when the marriage was dissolved.
The defendant entered into a rental agreement with his parents, who owned the other fifty percent (50%), to pay $435.00 per month plus insurance and utilities. He did not include his former wife in the rental agreement, nor did he enter into a separate rental agreement with her.
There were several opinions offered as to the fair-rental-value of the premises. The plaintiffs' expert, Allan Anglis, had been a real estate agent for fifteen years. He rented and sold property in the town of Southington and knows the rental market. He was also the agent involved in the sale of 319 Buckland Street between Robert Albrecht's parents and his former wife. Mr. Anglis inspected the premises on April 12, 1999. He inspected the outside, but not the inside of the premises. Mr. Anglis reviewed the photos of the premises with the unfinished construction and had considered that the location made for easy commuting. He also reviewed the fair-rental comparables which ranged from a high of $1,100 CT Page 4122 to a low of $750.00. In his opinion, the fair-rental-value was $1,092.00.
The defendant's expert, Patricia Griffin, was a real estate broker for thirty-five (35) years. Julian Albrecht, the defendant's father, requested her opinion as to the fair-rental-value of 325 Buckland Street. By letter dated May 18, 1998,[2] and reiterated at trial, in her opinion the fair-rental-value was between $500 — $550 per month. She believed the premises to be in poor condition and the unfinished addition created a hazardous condition for occupants. She also recommended that due to the hazardous condition the premises should not be occupied by a family with children. She also recommended that if leased to adults the insurance coverage should be increased to cover extended liability.
Patricia Griffin was unaware of who owned the premises. The defendant at that time occupied the premises with his then girlfriend, (now wife) and her children. Carrie Albrecht, the defendant's current wife had been living at the residence since August 1996. Kim Albrecht had moved from the premises in 1996. Patricia Griffin also stated that the fair-rental-value would increase by $150 per month when the premises were "fixed up. "
The opinions from the two experts demonstrate that property appraisals appear to be an art and not a science.
There were also three lay opinions as to the fair-rental-value of the premises. (FRV). The plaintiff, Kim Albrecht believed the F.R.V. to be between $870 and $1200 at the start of the trial, and $1100 at the end of the trial. The plaintiff had demanded rental payment in the amount of $600, half of $1200 per month.[3] The defendant, Robert Albrecht believed the F.R.V. to be $500 and Julian Albrecht assessed the F.R.V. to be between $475 and $550.00.
The premises located at 325 Buckland Street consist of a seven-room cape with kitchen, living room, and bedroom on the first floor and two bedrooms on the second floor. It is located near schools, churches and easy access to the highway. There was an addition started prior to the plaintiff leaving the residence in 1996. The defendant's present wife and her children occupied the premises from August 1996, after the plaintiff left.
Julian Albrecht is a mechanical engineer. He stated that he was involved with the construction of the addition at 325 Buckland Street. He was also part owner at the start of the construction. He stated that the heat was shut off during the renovations. However, there was a wood stove CT Page 4123 as an alternate source of heat. The construction was started while the plaintiff was still living at the premises. Mr. Albrecht also stated that on advice from his attorney, he should not improve the interior of the premises, only the exterior.
The defendant stated that he stopped the construction at the premises when the marriage was dissolved. At the dissolution, he was divested of his twenty-five percent (25%) interest, and the plaintiff's interest increased to fifty percent (50%).
Julian Albrecht talked about some water spots and cracked tile. It is noteworthy that neither Robert Albrecht, nor his current wife Carrie Albrecht, said very much about the condition of the premises which they occupied.
The plaintiff, Kim Albrecht lived at 325 Buckland Street for seventeen years, until 1996. She was familiar with the condition of the premises, the construction and needed repairs. After leaving the premises, she looked at ten to fifteen apartments in the area. She had rented a four-room apartment in a three-family house for $600 per month plus utilities. She had also rented a two-bedroom apartment in a house for $500 per month. She also rented a three-bedroom duplex for $900 per month.
One of the places the plaintiff looked at was 362 Buckland Street. This was described as smaller than 325 Buckland Street, and in worse condition. The monthly rental amount at 362 Buckland Street was $750 per month.
The court concludes that the reason for the condition of the premises, primarily the unfinished addition, is the result of the decision not to finish it until this litigation is resolved.
The court considered the following: All opinions as to fair-rental-value, the size and location of the premises; the continuous occupancy by the defendant, his wife and her children; the halting of the construction based on advice of counsel; the value added upon completion and the prevailing values of other rental units during 1998 and 1999. The court finds the fair-rental-value of 235 Buckland Street to be $1,000.00 per month.
The total amount owed for use and occupancy from January 23, 1998 to May 22, 1999 is $14,451.43.[4] The defendant owes the plaintiff fifty percent (50%) of the total amount ($7,255.71), for the use and occupancy of the premises. CT Page 4124
2.) LAWN MOWER
The defendant seeks damages for common law conversion and treble damages pursuant to Conn. Gen. Statutes § 52-564. Conn. Gen. Statutes § 52-564 provides in pertinent part "any person who steals any property of another . . . shall pay the owner treble his damages." The word "steals" as used in this section is synonymous with the statutory definition of the crime of larceny. Lauder v. Peck, 11 Conn. App. 161,165, 526 A.2d 539 (1987). Conn. Gen. Statutes § 53a-19 defines the crime of larceny as follows: "A person commits larceny when, with intent to deprive another person of property or to appropriate the same to himself . . . he wrongfully takes, obtains or withholds such property from an owner."
The plaintiffs, Rosa and Mario Ciccarello, lived at 319 Buckland Street, which was adjacent to 325 Buckland Street. They were related by marriage to Robert Albrecht. The plaintiffs owned a lawn mower which they had purchased for $845.88 on May 23, 1996. At the time of the purchase they had an old lawn mower (10-12 years old), which they sold for $50.00.
The defendant stated that he had owned an old lawn mower which he gave to the plaintiff, Mario Ciccarello, which Mr. Ciccarello sold to recoup some of the cost of the new mower. Mario Ciccarello and the defendant shared the chore of "lawn mowing" for 319 and 325 Buckland Street. The lawn mower was stored at 325 Buckland Street.
The relationship between the parties deteriorated when Kim Albrecht and Robert Albrecht became separated. The Ciccarellos moved the lawn mower from 325 Buckland Street and stored it at a neighbor's garage. The relationship between Robert Albrecht and the Ciccarellos improved a little and they moved the lawn mower back to 325 Buckland Street.
The relationship resumed its downward slide when the Ciccarellos saw Carrie Albrecht, then Robert Albrecht's girlfriend, riding on the lawn mower. Mario Ciccarello stopped going to 325 Buckland Street and mowing the lawns. By this time the parties were no longer talking to each other.
The Ciccarellos never retrieved the lawn mower but did demand by letter dated March 31, 1998, through counsel,[5] the return of the lawn mower. The defendant stated that they could have removed the lawn mower any time they chose. Rosa Ciccarello stated that after the end of the relationship, while the lawn mower was at 325 Buckland Street, they had incurred expenses when they paid the neighbor's nephew to mow their land. The Ciccarellos moved in March 1999 and bought a new lawn mower at CT Page 4125 a cost of $846.94. They are seeking reimbursement for those costs.
The Ciccarellos are not entitled to damages for common law conversion or treble damages for theft. There is no evidence that Robert Albrecht intended to permanently deprive the plaintiffs of the lawn mower. The plaintiffs and the defendants had a relationship which deteriorated at the separation and subsequent divorce of Robert and Kim Albrecht. The situation was exacerbated when Carrie Albrecht moved into 325 Buckland Street and was seen riding the lawn mower.
The lawn mower was shared by the parties and so was the chore of cutting both lawns. The Ciccarellos stored the lawn mower at 325 Buckland Street and had access to it whenever they wanted. The Court understands the decision by the Ciccarellos not to go and get it after they were no longer talking to Robert Albrecht. However, the court is persuaded that they could have picked up the lawn mower anytime . . . The Court is not persuaded that Mr. Albrecht intended to permanently deprive the plaintiffs of the lawn mower. The lawn mower based on date of purchase (May 23, 1996), and depreciation at ten percent (10%) per year is valued at $592.12. ($845.88 — $253.26).
The defendant is ordered to return the lawn mower to the plaintiffs so that they can sell it or he can purchase it from them within sixty days.
3.) RELEASE OF MORTGAGE
The issue is whether the defendant entered into an agreement, through his attorney, to release the mortgage in exchange for the principal on the note to be held in escrow, pending resolution of the litigation between the parties.
The common law rule of agency is that the actions of an agent, who is acting for a disclosed principle, are, as a matter of law, actions of the principle. Rich-Taubman Associated v. Commissioner of Revenue Services,236 Conn. 613, 620-621, 674 A.2d 805 (1996). Attorneys'-at-law are agents for their clients, and can bind their clients in legal matters. Butlerv. Butler, 1 Root 275 (Conn. 1791). "It is horn book law that clients generally are bound by the acts of their attorneys." Monroe v. Monroe,177 Conn. 173, 181, 413 A.2d 819 (1979). However, "an attorney who is authorized to represent a client in litigation, does not automatically have either implied or apparent authority to settle or otherwise to compromise the client's cause of action." Acheson v. White, 195 Conn. 211,213 n. 4, 487 A.2d 197 (1985). The attorney therefore must have authority to act on behalf of the client in order to bind the client.
"Apparent authority is that semblance of authority which a principle, CT Page 4126 through his own acts or inadvertences, causes or allows third persons to believe his agent possesses. Consequently, apparent authority is determined not by the agent's own acts, but by the acts of the agent's principal. The issue of apparent authority is one of fact to be determined based on two criteria. First, it must appear from the principal's conduct that the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted the agent to act as having such authority. Second, the party dealing with the agent must have acted in good faith, reasonably believed, under all the circumstance that the agent had the necessary authority to bring the principal to the agent's action." Tomlinson Board of Education, 226 Conn. 704, 734-35,29 A.2d 333 (1993).
On January 23, 1998 the marriage between Kim Albrecht and Robert Albrecht was dissolved. Attorney Ciccarello, counsel for the plaintiff in this case, represented Kim Albrecht in the divorce proceedings. At that time Kim Albrecht was awarded the defendant's twenty-five percent (25%) interest in 325 Buckland, which then gave her fifty percent (50%) interest. The defendant continued to live at the premises after the divorce.
The defendant was served with this complaint on May 12, 1998. The complaint was filed May 19, 1998. On June 12, 1998, the plaintiff, Kim Albrecht, gave the defendant a promissory note, secured by a mortgage on 325 Buckland Street, in the amount of $11,405.00, plus interest at four percent (4%) per annuum.
Kim Albrecht sold her interest in 325 Buckland Street to the defendant's parents and she acquired their interest in 319 Buckland Street. The defendant released the mortgage on 325 Buckland Street on April 9, 1999. On May 15, 1999, Kim Albrecht gave the defendant a mortgage on 319 Buckland Street as security for the promissory note. 319 Buckland Street was substituted for 325 Buckland Street. Attorney Onore represented the defendant in the substitution. The plaintiff sold 319 Buckland Street on July 29, 1999. This now meant that the note became due January 22, 2003 or on the sale or transfer of plaintiff's interest in 319 Buckland Street.
Attorney Onore represented the defendant in five separate actions including the release of the mortgage and an eviction proceeding. Four of the five have been resolved leaving only the present action as pending. The Court credits the testimony of Attorney Onore that he had discussed with the defendant placing $11,400 in escrow from the sale until the present litigation was resolved. This had been discussed as an alternative to defending an application by the plaintiff for a prejudgment remedy. CT Page 4127
The letters between Attorney Onore, Attorney Ciccarello and Attorney Stanek starting June 1999[6] are replete with references to the agreement for the release of the mortgage on 319 Buckland Street and for $11,405.00 to be held in escrow, pending the resolution of this case.
The defendant denies that he authorized Attorney Onore to agree to holding the funds in escrow. In support of this assertion he offered a letter he sent dated August 3, 1999 to Attorney Onore.[7] The defendant stated in the letter that he had received the release sent to him by Attorney Onore, but would not sign it because he found it unacceptable. He also requested full payment on the note because 319 Buckland Street had been sold. Attorney Ciccarello had sent the release to Attorney Onore attached to a letter dated July 13, 1999.[8]
The release included the following language, "the note secured by said mortgage having been fully paid and satisfied." The release had been sent prior to the closing on July 29, 1999 and before any funds were actually available to be placed in escrow. The defendant admitted at trial that he had discussed with Attorney Onore, the funds being held in escrow, both before and after the closing. He stated that he had recommended that the finds be held in an interest-bearing account if they were to be `tied up. ' He had objected to an escrow account with Attorney Ciccarello's name on it. Attorney Ciccarello had represented Kim Albrecht in all of her legal proceedings.
Julian Albrecht, the defendant's father, stated that on the morning of the closing, July 29, 1999, that he had told Attorney Ciccarello that the defendant would not sign the release. The defendant's father's statement does not negate the agreement to hold the funds in escrow or an interest bearing account. The Court finds that the defendant, by his actions, did authorize Attorney Onore to enter into an agreement concerning holding the funds in escrow. The defendant clearly disapproved of Attorney Ciccarello's name being on the account, but he wanted the account to bear as high an interest as possible. After he received the actual release for his signature, he demanded payment in full as the house had been sold.
Until receipt of the release, after the sale of 319 Buckland Street, the defendant had held Attorney Onore out as being authorized to act on his behalf. The defendant had agreed that the amount of principle could be held in an interest-bearing account until this case was resolved. The plaintiff, through her agent, Attorney Ciccarello acted in good faith and reasonably believed that Attorney Onore had the necessary authority to act on the defendant's behalf
The court finds that the defendant had entered into an agreement to release the mortgage on 319 Buckland Street and $11,405.00 would be held CT Page 4128 in an interest-bearing account, or escrow, pending the resolution of this case.
Conn. Gen. Statutes § 49-8 provides for a release within sixty days from written demand sent by certified mail, return receipt requested. The release must be provided if there is a bona fide offer to satisfy the mortgage or when the mortgagor has made a bona fide offer for partial satisfaction in accordance with the terms of the mortgage deed. If the mortgagee fails to provide the release the mortgagee is liable for damage at the rate of $200.00 for each week after the expiration of the sixty days to a maximum of $5,000 plus attorney's cost and fees.
The defendant had agreed to the release of the mortgage and failed to do so within sixty days after a written demand. The plaintiff had made a bona fide offer to satisfy the mortgage. The offer, which was accepted, called for holding aside the amount owed minus the interest, until all pending litigation between the parties was resolved. The resolution of all matters would determine the exact amount owed to each other.
The account was never opened, either because the defendant's social security number had not been provided or a result of defendant's subsequent action not to sign the release. The fact that the account was not opened does not negate the agreement, nor does it relieve the plaintiff of the obligation to pay the note plus interest.
The defendant is liable to the plaintiff for damages in the amount of $5,000.00. The maximum allowed by statute, plus attorney's fees and costs.
 CONCLUSION
1. The defendant is liable to the plaintiff for rent/use and occupancy from January 23, 1998 to May 22, 1999, at half the amount of the fair-rental-value.
2. The defendant is not liable for conversion of the lawn mower as the plaintiff did not meet its burden of persuasion under Conn. General Statutes § 52-564.
3. The defendant did agree to sign the release of the mortgage, with $11,405.00 if the proceeds from the sale of the premises to be held in escrow, pending the outcome of this litigation. He later changed his mind, after the closing, and demanded payment in full. Defendant is in violation of Conn. General Statutes § 49-8.
4. The plaintiff is awarded attorney's fees and costs pursuant to CT Page 4129 Conn. General Statutes § 49-8.
5. The plaintiff still owes the defendant $11,405.00 plus interest at four percent (4%) per year from June 12, 1998 to December 14, 2001.
ORDERS
1. The defendant is ordered to pay the plaintiff $7,225.71 (fifty percent of $14,451.43) within sixty days.
2. The defendant is ordered to turn over the lawn mower, or purchase it at its present value of $592.12, within sixty days.
3. The plaintiff is ordered to sign a release of the mortgage on 319 Buckland Street within sixty days.
4. The defendant is ordered to pay damages in the amount of $5,000.00 pursuant to Conn. General Statutes § 49-8.
5. Hearing to be scheduled concerning the amount of attorney's fees and costs.
6. The plaintiff is ordered to pay the defendant $11,405.00 plus interest within sixty days.
Crawford, J.